## McKERNON v. JOSEY OIL CO.

No. 15054—Opinion Filed Feb. 3, 1925.

1. **Mines and Minerals—Conveyance by Lessor of Part of Remaining Mineral Interest in Land—Construction.**

The contract decisive of this case provides: "That the said party of the first part in consideration of the sum of $160, the receipt of which is hereby acknowledged, and the considerations hereinafter set forth, does by these presents, grant, bargain, sell and convey unto the party of the second part, its successors and assigns, one-half of all of the oil, gas, coal and other minerals lying in and under the following described real estate situated in the county of Okfuskee and state of Oklahoma, together with one-half of all claims, rents, royalties accrued or hereafter issuing, accruing or growing out of, or founded upon an existing or hereafter existing mineral lease, to wit: (description omitted). It is understood that the above described premises are subject to an oil and gas mining lease in favor of Carter Oil Company and that there shall be hereby convey-

ed unto the second party the one-half interest in the oil remaining in first party under the terms of the said leasehold estate in the said Carter Oil Company and also any other interest in said oil and gas that the said party of the first part has, together with one-half of all their right, title and interest in and to the coal and other minerals lying in and under said tract."

Held, conveys an undivided interest in the royalty under the Carter Oil Company lease, and an undivided interest in the oil and gas rights in case the Carter Oil Company's lease expires and no other lease is made. Held, further, conveys an undivided interest in the coal and other minerals in and under the land, same not being subject to the oil and gas lease provisions.

**2. Appeal and Error—Correction of Judgment to Accord with Facts.**

A judgment correct in form, but based upon a false finding, may be corrected in conformity with the undisputed facts and the law governing the same.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by Terrence McKernon against the Josey Oil Company to cancel a written contract. Judgment for defendant, and plaintiff brings error. Affirmed.

J. C. Wright and Huddleston & Stephenson, for plaintiff in error.

J. B. Patterson and Floyd C. Dooley, for defendant in error.

Opinion by THREADGILL, C. Plaintiff in error brought suit, as plaintiff, against defendant in error, as defendant, in the trial court to cancel a deed to certain mineral rights of the N. W. ¼ of section 36, T. 12 N., R. 8 E., in Okfuskee county. The parties had a common grantor in A. C. Colwell and his wife. Plaintiff obtained title by warranty deed, dated October 20, 1921. Defendant's title was in the form of a deed conveying an undivided one-half interest in all the oil, gas, coal, and other minerals lying in and under the land subject to an oil and gas lease to Carter Oil Company, which lease provided one-eighth royalty for oil and certain payments for gas. The first royalty deed was made by Colwell and his wife to Altus Oil Company, September 21, 1921, after the execution of the oil and gas lease to Carter Oil Company, and designated in the the record as exhibit "A". On November 30, 1917, Altus Oil Company, by deed, transferred all its rights and interest to Middle States Petroleum Company, describing its interest as "all of its right, title and interest

in and to the oil, gas, coal and other minerals lying in and under" the land, "together with all its right, title and interest in and to the royalties accrued or hereafter accruing or arising or growing out of and founded upon existing or hereafter existing oil or gas mining lease or other mineral lease covering" the land. Such was the interest and title transferred to defendant. On February 17, 1920, Carter Oil Company released its lease, and no other lease was made on the land. After the issues were joined by petition, amended petition, answer and reply, the cause was tried to the court on the following agreed statement of facts:

"It is stipulated and agreed by and between the plaintiff and the defendant in the above styled action;

"(1) That on the 2nd day of September, 1915, A. C. Colwell and Laura Colwell were the owners and were in the possession of the real estate mentioned in the petition, to wit: (description omitted) (2) That on said date said A. C. Colwell and Laura Colwell executed and delivered to the Altus Oil Company the instrument which is exhibit 'A' to plaintiff's petition, the original of which is made a part of this agreement and constitutes a part of this agreed statement of facts.

"(3) That this instrument was filed for record in the office of the county clerk of Okfuskee county, Okla., on the 14th day of September, 1915, and is now of record in that office in record book 27 at page 459.

"(4) That the Josey Oil Company, defendant in this case, is now the owner of the interest in said land conveyed to the Altus Oil Company by A. C. Colwell and Laura Colwell, by reason of the assignments pleaded by plaintiff in his original petition, and filed as exhibits thereto.

"(5) That on the 20th day of October, 1921, said A. C. Colwell and Laura Colwell sold and conveyed the land in question to the plaintiff, Terrence McKernon, who is the present owner of the land, subject to whatever interest the Josey Oil Company may have in the same; this deed is made a part of this agreement and plaintiff is in possession under this deed.

"(6) That the plaintiff took his title to the land with record notice of the defendant's claim under exhibit 'A' above mentioned.

"(7) That the sole question presented to the court in this action is the quantum of interest conveyed by the instrument, which is exhibit 'A' to the original petition, or whether any interest was conveyed thereby, and judgment may be rendered accordingly.

"(8) It is also stipulated and agreed that at the time of the execution of the instrument which is exhibit 'A,' there was in force and effect an oil and gas lease on said

land, which is exhibit 'B' to plaintiff's original petition.

"(9) No oil or gas has ever been produced from said land."

The court gave judgment in favor of defendant, based upon the following statements:

"And it appearing from the said stipulation and the said instrument marked exhibit 'A' to plaintiff's original petition and from the oral argument and statements of counsel, that the only question submitted to the court and to be passed upon by the court, is whether the instrument, a copy of which is attached to plaintiff's petition and marked exhibit 'A' is sufficient under the law to convey one-half (½) of the oil and gas in and under the following described land, to wit: (description omitted.) and that being the sole and only legal question submitted to the court, the court concludes as a matter of law, that the said instrument, marked exhibit 'A' in plaintiff's original petition, does convey one-half (½) of the oil and gas in place under the aforesaid land and that the oil and gas in place in and under the aforesaid land is subject to sale, and said instrument marked exhibit 'A' to plaintiff's original petition is sufficient in law and does convey one-half (½) of the oil and gas as well as coal and other minerals in and under aforesaid land."

The plaintiff appealed and made seven assignments of error, which resolve themselves into two questions for our consideration, the answers to which are determinative of the appeal:

(1) What interest does the contract marked exhibit "A" convey in the oil and gas and coal and other minerals under the land described?

(2) Does the agreed statement of facts justify the judgment in favor of the defendant for an undivided one-half interest in the oil, gas, coal, and other minerals in and under the lands and quieting the title to same?

1. The material part of exhibit "A" is as follows:

"Witnesseth, that the said party of the first part in consideration of the sum of $160, the receipt of which is hereby acknowledged, and the considerations hereinafter set forth, does by these presents, grant, bargain, sell and convey unto the party of the second part, its successors and assigns one-half of all of the oil, gas, coal, and other minerals lying in and under the following described real estate situated in the county of Okfuskee and state of Oklahoma, together with one-half of all claims, rents, royalties accrued or hereafter arising, accruing or growing out of, or founded upon an existing or hereafter existing mineral lease, to wit: (description omitted.)

"It is understood that the above described premises are subject to an oil and gas mining lease in favor of Carter Oil Company and that there shall be hereby conveyed unto the second party the one-half interest in the oil remaining in first party under the terms of the said leasehold estate in the said Carter Oil Company and also any other interest in said oil and gas that the said party of the first part has, together with one-half of all their right, title and interest in and to the coal and other minerals lying in and under said tract.

"To have and to hold the above described estate, together with all and singular the tenements, hereditaments and appurtenance thereunto belonging or in any wise appertaining forever."

The next paragraph is the covenant of warranty which is against all persons and incumbrances, except the Carter Oil Company and its oil and gas lease.

From the language of this contract, it was the plain intention of the parties, first, to sell and convey to the second party an undivided one-half interest in the royalty to be had from the oil and gas under the terms of the development lease contract with the Carter Oil Company, which provided a term of 5 years for development and the term to be made permanent commensurate with oil and gas in paying quantities, the said royalty consisting of one-eighth of the oil found and saved and $200 a year for each gas well developed on the premises. Second. The same provision was to hold good under any oil and gas lease the parties might see fit to make on the premises in the future as indicated by the clause, "Thereafter existing mineral lease." In each of these cases it was the royalty interest being sold. The interest was involved in the oil and gas development lease and depending upon the success of the lease for its amount and value. It had no right of ingress and egress apart from the lease contract, and is a nullity without the lease contract to support it. In the third place, the contract provides that the party of the second part shall have an undivided one-half interest in the royalty provided under the terms of the Carter Oil Company's lease and "also any other interest in said oil and gas that the said party of the first part has." This clearly indicates intention to convey an undivided one-half interest in the oil and gas rights in case there is no oil and gas lease on the premises provided for royalty. This interest was independent of any lease contract and carried with it the right to enter, explore, and develop the premises to find and take out of the earth these substances. The fourth provision in the contract applies to coal and

other minerals and is contained in the language, just after the lease provision above mentioned, as follows: "Together with one-half interest of all their right, title and interest in and to the coal and other minerals lying in and under said tract." This provision is not made subject to any lease contract and is a sale of an undivided one-half interest in the coal and other solid minerals of the land with the implied right of ingress and egress to develop the same.

There is no contention that the contract was not sufficient to convey the royalty interest provided for under the Carter Oil Company's lease, but it is contended that this interest was the only interest intended to be conveyed, and when the Carter Oil Company released its lease in 1917, the royalty contract became a nullity and only a cloud on the title. Plaintiff says that the royalty contract did not intend to include coal and other minerals in its provision; that this part of the instrument of conveyance was printed in a printed form, and that the contract should be construed to mean only an intention to convey the royalty interest and no more. Citing Bettmen v. Harness, 42 W. Va. 433, 36 L. R. A. 566, and Parafine v. Cruce, 63 Okla. 95, 162 Pac. 716, and other authorities in support of his contention as to construction.

We cannot agree with counsel for the reasons given in the construction of the contract according to the plain language therein contained as above pointed out. The agreed statement of facts, upon which the case was tried, does not make any mention of a printed form that would make any difference as to the meaning of coal and other minerals therein contained, and we are not authorized in construing the contract to go beyond the agreed statement of facts. We think the provision for conveying the royalty lost its force with the releasing of the oil and gas lease, but the provisions for an undivided one-half interest in the oil and gas rights left or remaining in the grantor came into force, and this interest, together with the undivided one-half interest in the coal and other minerals, continued and were in full force and effect at the time plaintiff became the owner of the land and at the time the action was commenced and judgment rendered. This construction is in harmony with sections 5039, 5040, 5041 and 5044, Comp. Stat. 1921, and Hanna v. Mosher, 22 Okla. 501, 98 Pac. 358; Prowant v. Sealy, 77 Okla. 244, 187 Pac. 235, and Ramey v. Stephney, 70 Okla. 87, 173 Pac. 72.

We must, therefore, answer the first question in the affirmative, holding that the contract was sufficient to convey an undivided one-half interest in the oil and gas rights, and an undivided one-half interest in the coal and solid minerals in and under the land in controversy.

2. The second question, as to whether or not the agreed statement of facts is sufficient to justify the trial court's judgment, requires us to examine the language of the judgment and the meaning it conveys.

The judgment dismisses the plaintiff's petition and taxes him with the cost. We think this is correct. This language is plain, and there is no doubt as to the meaning, and the agreed statement of facts sustains it. Exhibit "A" above discussed and construed is sufficient to defeat the plaintiff's action and justify the dismissal.

The other part of the judgment, decreeing that defendant is the owner of an undivided one-half interest in the oil, gas, coal, and other minerals in and under the land and quieting defendant's title to the same, is not correct as to the oil and gas if the judgment means to quiet the title to the interest in these substances to the same extent and in the terms found and described by the court in the first paragraph, where the court found that exhibit "A" conveys to defendant an undivided one-half interest in "the oil and gas in place" in and under the land. This finding is erroneous, as the great weight of authority holds there can be no title to oil and gas in their places in and under the earth apart from the real estate containing them. Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N. E. 53, 122 Am. St. Rep. 144; Park v. Johnson, 55 Pa. 164, 93 Am. Dec. 732; Barker v. Campbell-Ratcliff Land Co., 64 Okla. 249, 167 Pac. 486; Rich v. Donehey, 71 Okla. 204, 177 Pac. 89.

The finding of the court should have been that exhibit "A" conveyed an undivided one-half interest in and to oil and gas rights of the land as well as an undivided one-half interest in and to the coal and other minerals in and under said land, as these were the only interests that could be found by the agreed statement of facts, and the only interests that could be awarded and quieted in the defendant by the judgment. We think this correction should be made so there will be no misunderstanding as to the oil and gas interest awarded defendant by the judgment and the extent of the title quieted. With this correction we recommend that the judgment be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 27 Cyc. p. 679 (1926 Anno); (2) 4 C. J. p. 1150.